**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

MAHAMMAD QURESHI.                                  Case No. 11-29148-EPK
                                                   Chapter 11

    Debtor.
_____/

### DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

### I. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Mahammad Qureshi (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's plan of reorganization (the "Plan"). A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

Priority claims in Class 1 will be paid in full. The secured creditor in class 2 will be impaired by adjusting the interest rate, duration and/or balance of the existing note. General unsecured creditors in Class 3 will receive monthly payments for 5 years following the Effective Date to equal their *pro rata* share of their allowed claims from Mr. Qureshi's salary (with such distributions to total $60,000 per year, with an additional $24,000.00 balloon payment at then end of the fifth year, based upon Mr. Qureshi's salary and disposable income).

    **A. Purpose of This Document.** This Disclosure Statement describes: (i) The Debtor and significant events during the bankruptcy case; (ii) How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the plan is confirmed); (iii) Who can vote on or object to the Plan; (iv) What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan; (v) Why the Debtor (also, the "Proponent") believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation; and (vi) The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.** The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing* The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at the U.S. Bankruptcy Court, 8th Floor, 1515 North Flagler Drive, West Palm Beach, Florida 33401.

2. *Deadline For Voting to Accept or Reject the Plan* If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401, or file the same through CM/ECF. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan.* Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon _____ by _____.

4. *Identity of Person to Contact for More Information.* If you want additional information about the Plan, you should contact Joe M. Grant of Marshall Grant, P.L., 197 S. Federal Highway, Suite 300, Boca Raton, Florida 33432.

**C. Disclaimer:** *The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II. BACKGROUND INFORMATION

Mr. Qureshi is an accomplished businessman that owns various corporate entities that serve as commercials landlords to primarily the convenience store and gas station market as well as providing related services throughout the State of Florida. The current headquarters for Debtor's operations is 6221 West Atlantic Blvd, Margate, FL 33063.

The principal cause of this bankruptcy case was the impact of the economy on the Debtor's corporate entities, in terms of a downturn in the real estate market, decreased rent and sale, increased fuel costs and the resulting difficulties for the corporate entities in servicing the corporate debt. Mr. Qureshi personally guaranteed a substantial amount of the corporate debt and when some of the corporate entities themselves filed Chapter 11 petitions, Mr. Qureshi filed his own individual Chapter 11 proceeding to deal with both his personal debt and the debt related to his personal guaranties of corporate debt. The

administratively consolidated case (11-26571-EPK) for Super Stop Petroleum, Inc, MAQ Management, Inc., Super Stop Petroleum I, Inc, and Super Stop Petroleum IV, Inc is pending in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, and the debtors are represented by McIntyre, Panzarella, Thanasides, Bringgold & Todd, P.L..

Since the filing of the Petition, the Debtor now believes that with the anticipated corporate restructuring and negotiation of his personal guaranty obligations, the Debtor now has sufficient income to pay his secured and unsecured debts.

### A. Projected Recovery of Avoidable Transfers.

1. In the 90 days prior to the Petition Date, the Debtor made approximately $41,000 in payments to ten creditors. Most, if not all of these, were made in the ordinary course, were for reasonably equivalent value and/or provided new value. The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions as the cost of litigation would exceed any possible recovery from any individual creditor, to the extent that there would be any recovery at all.

2. In the 18 months prior to the Petition Date, the Debtor transferred his interest in his homestead to his sister, Abida Iqbal. The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions, as the property would be exempt, and the sale would not yield any additional distribution to unsecured creditors.

3. The Debtor is not aware of any additional avoidable transfers. To the extent that the companies in which the Debtor holds an interest may have made transfers which were fraudulent or preferential, those transfers are avoidable only by those companies themselves, and may not be avoided by the Debtor in his individual bankruptcy.

**B. Claims Objections.** Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**C. Current and Historical Financial Conditions.** The Debtor refers readers to his monthly debtor in possession reports filed in this case. The Debtor has filed Monthly Operating Reports ("DIP Report") as required by the U.S. Trustee on a monthly basis since the filing of this Chapter 11 case. The Debtor's DIP Reports show that Mr. Qureshi has generally earned between $8,500 and $12,200 per month during the last six months in the form of salary and/or distributions. Like many small business owners, the entities managed by the Debtor pay MAQ Management, LLC[1] a management fee when and if there is sufficient cash to do so. MAQ Management, LLC, in turn, provides the Debtor with a distribution when and if funds are available. As such, no one entity pays

---

[1] MAQ Management, LLC is a different entity than the MAQ Management, Inc., a corporate debtor whose chapter 11 case is one of the cases administratively consolidated under Case No. 11-26571-EPK.

him a sum-certain, regular salary. Still, the Debtor's overall income remains mostly constant. There are a few months in which the Debtor's income was outside this range, but that was due to accounting fluctuations[2] which came about as a result of changing corporate bank accounts, operational necessity related to funding his legal representation to pay court-ordered attorney fees to his bankruptcy counsel, and other administrative reasons. During the last 15 months, his median income was $12,533.52. Attached hereto as Exhibit 1 to the Plan of Reorganization is a projection of the Debtor's budget and expenses. Because of the universal effects of the economic downturn, it is unlikely that the Debtor's gross income will increase significantly, either in the form of additional salary and/or distributions.

### III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A. What is the Purpose of the Plan of Reorganization?** As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B. Unclassified Claims.** Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

*1. Administrative Expenses.* Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 503 of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The Debtor estimates $50,000 will be owed to the Debtor's attorney on account of hold-backs and fees incurred in between fee applications. Since July 2011, the Debtor has paid $110,527.00 to the Debtor's attorney. The Debtor is currently paying the Debtor's attorney for the amounts approved by the Court over time, but such payments will cease at plan confirmation.

The Reorganized Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, upon the entry of an order of this Court

---

[2] All reports are prepared by the in-house accountant for the MAQ Group, who is an employee of a non-debtor entity, at no expense to the Estate.

dismissing this Case, or upon entry of an order converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

**C. Classes of Claims and Equity Interest.** The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan: Priority claims in Class 1 will be paid in full. The Class 2 Secured Creditor, Mercedes Benz, will be impaired by adjusting the interest rate, duration, and/or balance of the existing note, and will receive $534.00 per month. Class 3 unsecured claims estimated at $25,000,000.00 will receive their *pro rata* share of equal monthly payments from the pot of $60,000 per year, with an additional payment of $24,000.00 at then end of the fifth year, funded by Mr. Qureshi's income. Class 3 claims include, but are not limited to, Mr. Qureshi's personal guaranties on the debts of the entities in which he holds an interest. Class 4 interests will continue in place. The Debtor assumes that, consistent with *In re Gelin*, 437 B.R. 435 (Bankr.M.D.Fla.2010), and *SPCP Group, LLC v. Biggins*, 465 B.R. 316 (M.D.Fla.2011), the absolute priority rule does not apply to an individual chapter 11 case.

**D. Means of Implementing the Plan.** Payments and distributions under the Plan will be funded from Mr. Qureshi's salary or distributions paid to him on account of his membership interests. While his income varies slightly, the sum total of his salary/distributions from the various entities in which he holds an interest is approximately $10,000 to $12,000 per month. A chart showing the sources of the Debtor's income over the last 15 months is attached as Exhibit B[3]. In order to assure that this continued source of income remains, the Debtor will receive a gift from his brother, Aijaz Qureshi, conditioned on the payment of $115,000.00 into the estates of the corporate debtors, such that the Debtor can retain his ownership interest and his source of income. The Debtor also commonly receives gifts from his brother, Aijaz Qureshi, to assist him financially in funding his legal representation and assist in his living expenses while the case is still pending. The Debtor does not anticipate receiving additional gifts post-confirmation.

**Risk Factors.** The proposed Plan has the following risks: Mr. Qureshi could lose his income, which appears unlikely at the present time. Four of the entities in which he holds an interest, Super Stop Petroleum, Inc, MAQ Management, Inc., Super Stop Petroleum I, Inc, and Super Stop Petroleum IV, Inc also filed chapter 11 petitions. The administratively consolidated case (11-26571-EPK) is pending in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, and the debtors are represented by McIntyre, Panzarella, Thanasides, Bringgold & Todd, P.L.. Should that case convert to chapter 7, or if the plan of reorganization impairs Mr. Qureshi's controlling interest, a part of his salary may be in jeopardy. As outlined in sections II.C, Mr. Qureshi's income is not a regular salary, and is determined, in large part, by the success of the companies he manages. Based on the most-likely projection as

---

[3] The total *monthly* income may differ slightly in this spreadsheet from his monthly operating reports, as it utilizes slightly different accounting methods. The total annual income, however, is the same.

to these companies maintain the status quo, the companies provide him with sufficient income, through MAQ Management, LLC, to fund the plan. However, there is always a risk that changing economic conditions may affect the Debtor's ability to fund the plan. Since this case has been pending, the Corporate Debtors have not paid a management fee to MAQ Management, LLC (and thus have not indirectly provided income to the Debtor). As such, the outcome of the Corporate Cases does not pose a significant risk to the Debtor's ability to fund the plan.

**F. Executory Contracts and Unexpired Leases.** There are no executory contracts or unexpired leases.

**G. Tax Consequences of Plan.** Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

### IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A. Who May Vote or Object.** Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired. In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1. *What Is an Allowed Claim?* Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was October 11, 2011.***

2. *What Is an Impaired Class?* As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote.* The holders of the following five types of claims are *not* entitled to vote: • holders of claims that have been disallowed by an order of the Court; • holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes. • holders of claims in unimpaired classes; • holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and • holders of claims in classes that do not receive or retain any value under the Plan; • administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

4. *Who Can Vote in More Than One Class.* Creditors whose claims have been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, are entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B. Votes Necessary to Confirm the Plan.** If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes, as discussed later.

1. *Votes Necessary for a Class to Accept the Plan.* A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Non-accepting Classes.* Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a cram down confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

**C. Liquidation Analysis[4].**  To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Under both a Chapter 7 and the proposed plan, Class 1 claims are paid in full. Under both a Chapter 7 and the proposed plan, the Class 2 claim is paid to the full extent of the secured portion of the claim. In the proposed plan, the Debtor seeks to pay Class 3 $324,000.00 over 60 months, a present value of $287,893.00, assuming a 3.25% prime interest rate plus a 1.5% risk adjustment. The Debtor's liquidatable assets total approximately $216,934.06, after satisfaction of the secured portions of the secured claims. Thus, the $324,000 distribution over five years to Class 3 claims is better than the distribution Class 3 creditors would receive in a Chapter 7.

**D. Feasibility.**  The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

Mr. Qureshi's salary and any potential distributions are sufficient to fund plan distributions; therefore the plan is feasible as long as he remains employed. *See* Sections II.C and III.D for a more detailed discussion of the risks posed by Mr. Qureshi's employment situation. Mr. Qureshi expects to remain employed for the duration of the Plan.

1. *Ability to Initially Fund Plan.* The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization.* The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Debtor's current salary is sufficient to fund the plan payments.

### V. EFFECT OF CONFIRMATION OF PLAN

---

[4] (a) The liquidation analysis attached as Exhibit C includes the Cartagena property, even though the record owner is the Debtor's sister, Iqbal Qureshi, to illustrate that even if the transfer is avoided, the property would be exempt as the Debtor's homestead, and would yield no additional distribution to creditors.
 (b) The Debtor's schedules also show a property at 5021 Wise Bird Road, Windemere, FL. On September 13, 2013, the Court approved the sale, and the Debtor sold the property with no net gain for the estate.
 (c) Some of the entities in which the Debtor holds an interest may own valuable assets free and clear; the value of the Debtor's interest, however, may still be zero if the liabilities of the entity are greater than the assets.  For example, a number of creditors have expressed concern that GMAQ, LLC holds some unencumbered assets. While the Debtor does not have access to GMAQ, LLC's books and records, the Debtor is aware that GMAQ, LLC has significant debts which are greater than its assets. As a result, his membership interest has a shareholder's deficit.

**A. Discharge of Debtor.**  Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**B. Modification of Plan.**  The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.   Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

**C. Administrative Closing.**  The Debtor may seek to administratively close the case after confirmation. After all plan payments have been made to the unsecured creditors, the Debtor can seek to reopen the case, and obtain a discharge and final decree.

**D. Final Decree.**  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

None.

Respectfully submitted this 26th day of April, 2013.

____/s/ Mahammad Qureshi_____
Mahammad Qureshi, Debtor