Case 13-17836-RBR    Doc 44    Filed 05/29/13    Page 4 of 24

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement") dated May 29, 2013, is by and among Afridi Investments, L.P. ("Lender"); Super Stop 407, Inc. ("Debtor"), Mahammad Qureshi, ("Mahammad") and Denise Qureshi ("D. Qureshi") (collectively, "Guarantors"). Subco Beeline, Inc. ("Beeline") joins this Settlement as it relates to those provisions that affect it and any obligations imposed upon Beeline hereunder. Debtor and Guarantors are collectively called herein the "Obligor." Obligor and Beeline are collectively called herein the "Super Stop Parties." The parties hereby stipulate and agree as follows:

1.      Lender is plaintiff in that certain action against Obligor filed in Orange County Circuit Court, Case No. 2010-18640 (the "State Case").

2.      Lender obtained an amended judgment of foreclosure in the State Case, entered March 1, 2013, in the amount of $2,013,561.09 plus interest and reserving the amount of attorneys' fees and costs to be awarded (the "Foreclosure Judgment").

3.      The court in the State Case also entered an order on Lender's motion to enforce assignment of rents, dated March 1, 2013 (the "Rents Order").

4.      Super Stop Parties (a) acknowledge that they have no valid claims, counterclaims, objections, rescission rights or claims of offset against Lender, the Foreclosure Judgment, or the obligations under the loan documents described in the complaint filed in the Stated Case (the "Loan Documents"), (b) in any event, release and waive any and all claims, cross-claims, defenses, whether known or unknown, legal or equitable, against Lender and its agents, employees, and counsel, and (c) reaffirm that Lender has a valid, perfected mortgage and security interest in the property described in the mortgage and security agreements and other documents that make up the Loan Documents), including but not limited to the real property, improvements located thereon (the "Real Property"), and the gas station pumps and equipment, coolers, freezers, racks and the like therein (the "Collateral"). However, Collateral does not include items that are owned by non-insider third parties such as coffee, soda, Lotto, and ATM machines, displays for impulse items, and POS system. Debtor must provide Lender reasonable documentation as to such property, and Obligors agree Lender at its sole option may assume at its expense any agreements with third parties regarding the foregoing property.

5.      Guarantors assert no interest in Debtor. BNK Real Estate, Inc., which is controlled by AJ Qureshi, is the 100% shareholder of Debtor. Beeline, which is owned and controlled by Mahammad, operates the gas station and convenience store business on a portion of the Real Property (the "Gas Station"), pursuant to a verbal month-to-month agreement, which included payment of all expenses associated with the Property, including paying the sums due to Lender under the Loan Documents. However, Beeline for some time before the commencement of Debtor Bankruptcy did not or was unable to satisfy those obligations. Commencing March 20, 2013, and continuing on the 15th day of each month thereafter, Beeline has agreed to pay Debtor gross rent each month of $9500.00, as long as it has possession of the Gas Station, as permitted by this Settlement. Beeline also agrees to maintain casualty and liability insurance for the Property and operations conducted on the Property in the same type and amounts that are reflected in the Certificates of Insurance provided to Lender and the United States Trustee

1

Office, with Lender named as a loss payee and additional insured. Beeline shall be responsible for timely paying for any goods or services provided to the Property, including fuel, food stuffs and other goods, and utilities. Beeline obtains no vested property rights by virtue of this arrangement.

6.    Obligor and Beeline, which joins this Settlement with respect to provisions that affect or otherwise relate to Beeline, acknowledge their interests are subordinate and inferior to the interest of Lender in the Collateral. Beeline also acknowledges that it has no legal or ownership or beneficial interest in any of the Collateral other than month-to-month possession under the verbal agreement.

7.    Lender agrees to refrain from exercising Lender's rights and remedies under the Foreclosure Judgment and Loan Documents except as provided herein, on the following terms and conditions:

a.    On or before **May 27, 2013**, Lender receives from Obligors this Settlement, fully executed by Obligors, and notarized, and Obligors do not breach a term of the Settlement.

b.    On or before **May 29, 2013**, a motion to approve this Settlement has been filed and served by counsel to Debtor in Debtor's chapter 11 case, U.S. Bankruptcy Court, Case No. 13-17836-RBR (the "Debtor Bankruptcy"), and immediately thereafter by counsel to Mahammad in his chapter 11 case, U.S. Bankruptcy Court, Case No. 11-29148-EPK (the "Mahammad Bankruptcy"), and both Debtor and Mahammad shall seek a hearing on an expedited an shortened notice basis (No motion is required for D. Qureshi who is not a debtor in any bankruptcy case.) The parties and their counsel may not refuse a hearing date made available by the court in either bankruptcy case to consider the motions on the basis of his or her unavailability, absent being in trial or an evidentiary hearing in an already noticed case or they or an immediate family member is hospitalized.

c.    By **June 30, 2013**, unless extended by Lender in writing or a hearing by that date cannot be scheduled solely due the court in Debtor Bankruptcy (the "Bankruptcy Court") not being able to schedule a hearing by that date, in which case the deadline shall be **July 15, 2013**, the Bankruptcy Court in the Debtor Bankruptcy enters an order approving this Settlement.

d.    By **June 30, 2013**, unless extended by Lender in writing or a hearing by that date cannot be scheduled solely due the court in the Mahammad Bankruptcy not being able to schedule a hearing by that date, in which case the deadline shall be **July 30, 2013**, the Bankruptcy Court in the Mahammad Bankruptcy enters an order approving this Settlement as it relates to him. At Lender's sole discretion, the failure of to obtain entry of an order of approval in the Mahammad Bankruptcy shall not affect the effectiveness or enforceability of this Settlement.

e.    Debtor agrees to entry of in Debtor Bankruptcy, and shall comply with, an additional interim adequate protection order ("Additional Adequate Protection Order") in

substantially the form of the first interim cash collateral order entered May 21, 2013 ("Initial Adequate Protection Order"), except that the terms shall be applicable through the time of the Payoff Amount (defined below).

      f.     Super Stop Parties refrain from making any claim or taking any legal action against Lender or any of Lender's predecessors or successors in interest.

    8.     An order modifying the automatic stay under 11 U.S.C. Section 362, in the form and content acceptable to Lender, shall be entered immediately in Debtor Bankruptcy that modifies the automatic stay to (a) authorize and direct Debtor and Beeline to execute and deliver to Lender the Consent attached hereto as **Exhibit** 1, and (b) permit the court in the State Case to enter without further notice or hearing an amended judgment in substantially the same form as the Foreclose Judgment, but which amends the Foreclosure Judgment to include agreed attorneys' fees and costs of $112,000.00, and also includes post-judgment interest at the judgment rate from date of entry of the Foreclosure Judgment on March 1, 2013 (the "Amended Foreclosure Judgment"). However, no foreclosure sale date shall be set except as provided in the Settlement.

    9.     Obligor further agrees that Lender is entitled to an additional $125,000.00 in additional attorneys' fees and expenses, interest, and a forbearance fee (the "Contingent Debt"); provided, however, Lender waives collection of the Contingent Debt if Obligor pays the Payoff Amount by the Payoff Deadline and does not breach the terms of the Settlement; otherwise, the Contingent Debt shall be due and recoverable as provided below.

    10.    Pursuant to the Initial Adequate Protection Order and Additional Adequate Protection Order (the "Adequate Protection Orders"), commencing May 20, 2013, and on 20th of each month thereafter, Debtor shall pay to Lender $10,000 per month in adequate protection payments, with the paid amounts applied to the Payoff Amount if no breach of the Settlement occurs and as long as Lender is not paid off through a Private Sale of one parcel of the Real Property; in the event of a breach of payoff through the Private Sale of one parcel, the payments are not credited and shall be applied in Lender's discretion. This provision also shall be made part of an amended order modifying the Rents Order in the State Case ("Amended Rents Order"), which shall be entered without hearing or notice, and for which the automatic stay also shall be modified.

    11.    Unless paid earlier pursuant to a "363 Sale" as provided herein, on or before **September 15, 2013 at 2:00 p.m.** (the "Payoff Deadline"), Debtor shall cause the amount of the Amended Foreclosure Judgment (which does not included the Contingent Debt, as long as no breach has occurred hereunder) to be paid in full, less any amounts paid to Lender pursuant to the Adequate Protection Orders (the "Payoff Amount"). The Payoff Amount shall be paid by wire transfer, as instructed in writing by Lender or Lender's counsel.

    12.    On the **15th of June 2013**, and on the **15th of each month thereafter**, Debtor and Beeline each shall deliver to Lender's counsel a reasonably detailed profit and loss statement, balance sheet, general ledger, cash disbursements journal, and the check register, sales tax receipts, credit card reconciliation, and bank statement for the prior month for the (i) operations and activities of Debtor and Beeline, respectively. Lender and its counsel and consultants shall

have right to inspect the Real Property at any time upon 48 hour notice by email or fax to Debtor's counsel; provided, such inspection shall not unreasonably interfere with the operations at the Real Property. This provision also shall be part of any Adequate Protection Orders and the Amended Rents Order.

13.    The Real Property includes a gas station and store on one part of the Real Property (the "Gas Station") and vacant land on another part of the Real Property ("Vacant Land"). The Gas Station and Vacant Land serve as undivided collateral under the Loan Documents. (Lender must agree in writing to the correct legal descriptions of the divided parcels in advance of any contract executed by the parties.) However, Lender has agreed on a limited and conditional basis to permit these properties to be sold separately as provided below. Provided no breach by the Super Stop Parties occurs under this Settlement, Debtor at its option, Debtor may seek to sell the Collateral pursuant to 11 U.S.C Section 363 ("363 Sale") on an "as is" basis and "free and clear of liens and interests" but solely as provided herein. Debtor may sell to a third party, subject to approval of the Bankruptcy Court, (a) the Gas Station or the Vacant Land, or both the Gas Station and Vacant Land at the same time, so long as and only if (i) the property is sold through a private sale and not an auction, (ii) the sale closes before the Payoff Deadline, (iii) the net proceeds of that sale are equal to or greater than the Payoff Amount, and (iii) the Payoff Amount is received and collected by Lender at that closing (the "Private Sale").

14.    As an alternative to a Private Sale, Debtor may sell the Collateral at an auction or public sale pursuant to 11 U.S.C. Section 363 ("auction 363 Sale"), but solely as provided below.

15.    If an auction 363 Sale is proposed, only the entire Collateral may be sold as a unit and not divided in any way, absent Lender's written consent, and in an auction Lender shall be the "stalking horse bidder," subject to higher bids. In order to exercise the auction option, Debtor shall provide notice to Lender in writing on or before **June 25, 2013 at 5:00 p.m.** of its intention to pursue such an auction 363 Sale. The failure to provide such notice shall automatically waive Debtor's right to proceed with an auction 363 Sale, absent Lender's written consent. The sale of the Collateral shall be to the highest bidder as approved by the Bankruptcy Court, pursuant to the conditions and procedures described herein and approved by the Bankruptcy Court. Debtor's failure to exercise this right shall not affect its rights to satisfy the Payoff Amount by the Payoff Deadline through the Private Sale or refinancing.

16.    If an auction 363 Sale is sought, on or before **July 1, 2013, by 5:00 p.m.,** Debtor at its expenses shall prepare, file and serve a motion to approve bid procedures and to sell the Collateral with a proposed bid procedures order and an agreement for purchase and sale with Lender as the "stalking horse bidder," all in the form and content acceptable to Lender ("Auction Sale Motion Documents"). The failure to file and serve the Auction Sale Motion Documents shall waive Debtor's right to proceed with a 363 Sale, absent Lender's written consent. The Auction Sale Motion Documents must seek approval of Lender as the "stalking horse" bidder based upon a price of $2,115,651.09 in the form of a credit bid under 11 U.S.C. Section 363(k). Lender shall be entitled to a "break-up" fee of $10,000. 00 (if an objection is to the auction Sale Motion Documents is filed, Lender shall be entitled to recover as part of the Payoff Amount its reasonable attorneys' fees and expenses incurred in connection with the objection as approved by the Bankruptcy Court) ,. (Lender shall have the ability also to credit bid the interest accruing on the amount of the Foreclosure Judgment at the judgment rate from its date of entry and the

amount of the "break-up fee" less any adequate protection payments received by Lender during the Debtor Bankruptcy. Lender must bid cash above of the foregoing amounts if it wishes to continue to bid above the credit bid amount. Bid increments shall be not less than $50,000.00. Lender or the highest bidder must receive in the sale approval order a good faith finding under 11 U.S.C. Section 363(m) as condition to close.

17.    The motion to approve the auction 363 Sale shall request expedited relief to shorten notice and time of hearing for approval of the auction 363 Sale and bid procedures order consistent with the provisions herein and otherwise acceptable to Lender. The bid procedures order must be entered on or before **July 11, 2013**, absent Lender's written consent.

18.    On or before **August 9, 2013, at 5:00 p.m.**, which is the bid submission deadline for any auction 363 Sale, any potential bidder must submit to Debtor and Lender an executed purchase agreement in the same form as that executed with Lender, along with a black-lined version to show any changes (any added contingencies or conditions to closing shall disqualify the bid), and at the same time post a non-refundable (unless it is not the successful bidder) cash deposit of $200,000.00 with the proposed escrow agent, which shall be reasonably acceptable to Lender but may not be any counsel to Debtor or any affiliate associated with Debtor. A potential competing bid must be in the amount of at least $50,000.00 more than Lender's "stalking horse bid." Any potential bidder other than Lender shall provide to Debtor and Lender at the same time its submits a bid and the full legal name and street business address of the individuals that are the principals of the potential bidder and commercially reasonable written proof of its ability to fund any successful bid. Any person or entity that does not comply with this provision shall not be permitted to bid at the auction. If there are no qualified bidders or timely bids, no auction shall be required, and the auction 363 Sale to Lender for its "stalking horse bid" shall be approved at the auction 363 Sale hearing, and Debtor shall immediately proceed to consummate the same, absent the existence of an order staying the auction 363 Sale. The sale approval order shall contain a waiver of the 14 day automatic stay provision under the bankruptcy rules.

19.    If one or more "qualifying bids" are submitted by the bid submission deadline, an auction shall occur on or before **August 12, 2013 at 1:00 p.m**. at the Miami offices of Foley & Lardner, LLP, with the hearing to approve the highest bid occurring on or before **August 14, 2013**. Bidders must be present personally or counsel of record in the case to participate in the auction. Debtor shall not have the ability to cancel, withdraw, or continue the 363 Sale once the bid procedures order is entered, absent Lender's written consent. The Approved Broker shall conduct any auction. A court reporter shall record the proceedings.

20.    The closing of the auction 363 Sale shall occur the first business day following entry of the order approving the sale (which order must in the form and content acceptable to Lender), which must occur in all events on or before **August 16, 2013 at 5:00 p.m.** (the "closing"), such that the Payoff Amount is fully satisfied by cash proceeds from the 363 Sale or Lender's credit bid at the closing; otherwise, the auction 363 Sale and auction Sale Motion Documents shall be deemed automatically withdrawn and null and void, absent Lender's written consent. If the highest bidder fails to close, the next highest bidder shall close within two (2) business days of the closing. The successful bidder shall be responsible for payment of any title insurance, recording fees, and documentary stamp taxes due, on top of its bid.

21.    Subject to approval of the Bankruptcy Court, Debtor may engage a licensed Florida real estate broker to assist with any 363 Sale, which broker is reasonably acceptable to Lender (the "Approved Broker"). The Approved Broker engaged by Debtor must be independent of Debtor or any affiliate of Debtor any principal of the foregoing. Except for Lender, which has no liability for any commission of any broker or salesman engaged by Debtor except as expressly provided hereafter, any other buyer of the Collateral shall be responsible for paying any broker's commission. If Lender is the successful bidder at any auction, Lender shall only pay a fee to the Approved Broker based upon the amount of its cash overbid.

22.    Debtor also may engage engineers, surveyors, planners, and the like at its sole expense in connection with any effort to sell the Collateral; provided, however, Lender shall not be liable for any such expenses whether as surcharge under 11 U.S.C. Section 506 or otherwise and any right to surcharge is waived.

23.    The deed deliverable by Debtor at closing of the auction 363 Sale shall be by special warranty, along with a Bill of Sale for the equipment.

24.    By joining this Settlement, Beeline acknowledges its month-to-month agreement is subject to termination immediately upon the closing of a sale pursuant to this Settlement, except as otherwise expressly agreed to in writing by the successful buyer, and thus any 363 Sale is "free and clear" of its interests, which provision shall be included in any order approving the 363 Sale.

25.    Debtor and Beeline shall maintain the Collateral such that it does not suffer any material waste or deterioration until the closing, and they shall not remove any equipment or fixtures from the Collateral. They shall cooperate in the turnover of the Collateral to the highest bidder, as well turnover of any plans, specifications, surveys, certificates, and books and records regarding the Collateral.

26.    If the auction and 363 Sale do not occur as required herein, Obligor still shall have until the Payoff Deadline to pay the Payoff Amount as provided above; otherwise, Lender is entitled to immediately enforce its rights thereunder; provided, however, Debtor and Beeline shall continue to comply with the terms of any Additional Adequate Protection Order and the Settlement applicable in the interim.

27.    If the Payoff Amount is not received by the Payoff Deadline, solely upon the filing by Lender of a motion and affidavit simply stating "the Payoff Amount was not paid by the Payment Deadline," and without notice, hearing, or without further action, the Bankruptcy Court shall enter an *ex parte* order fully terminating the automatic stay and permitting, the court in the State Case, without hearing or notice, (i) to enter another amended foreclosure judgment in substantially the same form as the Foreclosure Judgment ("Second Amended Judgment") adding the Contingent Debt and setting the foreclosure sale of the Collateral for any date selected by Lender consistent with Chapter 45, Florida Statutes, and (ii) upon additional written motion, without any grounds being asserted or any hearing or notice required, enter an order appointing a receiver for the Collateral in the form attached hereto as **Exhibit 2**, including requiring Debtor and its employees and agents to immediately turnover possession and control of the Collateral and any books and records and accounts pertaining thereto, and they shall not interfere with the

receiver's duties. The receiver shall have the broadest powers of a receiver to manage and operate the Collateral and with the ability to sell the Collateral at private or public sale as determined by the receiver, in consultation with Lender. Lender shall have sole discretion to choose the receiver, no receivership bond is required, and Debtor and its agents and employees shall fully cooperate with the receiver. The Super Stop Parties consent to the entry of the orders as provided herein.

28.     If the Super Stop Parties or any other entity which is affiliated with them or any of their employees or agents ("Debtor Affiliates") engage in any conduct, whether directly, or indirectly, that interferes with Lender's rights under the Settlement, including anything that results in Lender's inability to have the Amended Foreclosure Judgment entered or the foreclosure sale set or concluded, then upon motion, Lender shall be entitled to liquidated damages of an additional $125,000.00, as provided in paragraph 9, which sum shall be added to the Second Amended Foreclosure Judgment in the form of another amended foreclosure judgment (the "Third Amended Foreclosure Judgment"), as the parties agree that it is presently difficult to determine and anticipate the extent of damages caused to Lender by such conduct and thus the parties agree that this sum is reasonable under the circumstances. The Third Amended Foreclosure Judgment shall be entered without hearing or notice upon the filing of an affidavit by Lender stating that any of Debtor Affiliates have filed a legal pleading, motion, notice, or other piece of paper in any court or tribunal that prevented or delayed the entry of the judgment or foreclosure sale pursuant thereto, and attaching a copy of said pleading, motion or other piece of paper. If the delay or other interference is the result of anything other than the filing of an legal pleading, motion, notice or other piece of paper in any court or tribunal, then the Third Amended Foreclosure Judgment shall be entered only after notice and hearing.

29.     Beeline joins this Settlement and consents to the entry of the Amended Foreclosure Judgment that adjudicates its interests in the Collateral are subordinate and inferior to that of Lender, are foreclosed, and that a writ of possession can be issued against it without further notice or hearing, upon the recording of the certificate of title for the Collateral. Upon execution of this Settlement, Beeline also shall execute the Consent to the entry of the Amended Foreclosure Judgment in the State Case (and Order Appointing Receiver) in the form attached hereto as **Exhibit 1**.

30.     Debtor and Beeline shall be liable to Lender or to the successful bidder at the 363 Sale for any damages, including attorneys' fees and costs, incurred as a result of the failure to voluntarily vacate the Real Property, upon demand, after the certificate of title is issued.

31.     Upon Lender's receipt of the Payoff Amount in collected funds by the Payoff Deadline, Lender shall satisfy the Amended Foreclosure Judgment, and Obligor shall be deemed released and discharged from any claim Continents, liabilities or debts to Lender, whether legal or equitable, known or unknown, except for their obligations under the Settlement, without any further action being required; otherwise, Obligor remains liable to Lender for the amounts due under the Second Amended Foreclosure Judgment or Third Amended Foreclosure Judgment, as applicable, and as provided in the Settlement. In the event Lender obtains title to the Collateral, then there shall be an irrevocable satisfaction of all obligations or liability owing by any Obligor to Lender for any reason, and there shall be no further amounts due to Lender or its assigns by any Obligor; provided, the transfer of title to Lender is not avoided.

32.    Upon entry of the orders approving the Settlement, Lender agrees not to file any objections to any debtor-sponsored plan of reorganization in Debtor Bankruptcy or Qureshi Bankruptcy, and will vote in favor of such plans.

33.    Any order dismissing Debtor Bankruptcy or Qureshi Bankruptcy shall not affect the enforceability of the terms of this Settlement, and Debtor and Mahammad agree that any such dismissal orders shall contain such a provision.

34.    Upon written notice from Lender, Super Stop Parties agrees to execute and deliver any further instruments or documents and to take all such other action as Lender may reasonably request and fully cooperate with Lender in order to evidence or effectuate the consummation of the transactions contemplated hereby and to otherwise carry out the intent of the transactions hereunder.

35.    Lender and Super Stop Parties each had the benefit of counsel in connection with executing this Settlement. Lender and Super Stop Parties execute this Settlement knowingly and voluntarily after undertaking a thorough investigation and consideration of all the relevant facts and circumstances surrounding this action.

36.    Lender and Super Stop Parties have entered into this Settlement without undue influence, fraud, coercion, duress, misrepresentation or restraint having been practiced upon them in connection with the Settlement.

37.    This Settlement may be executed in several counterparts and all counterparts so executed shall constitute one agreement binding on all the parties hereto, notwithstanding that all the parties are not signatories to the original or the same counterpart. If less than all parties sign this Settlement, or a counterpart, the Settlement shall be effective against the signing parties.

38.    The invalidity, illegality or unenforceability of any provision of this Settlement, pursuant to judicial decree or otherwise, shall not affect the validity or enforceability of any other provision of this Settlement, each of which shall remain in full force and effect. The terms of this Settlement shall also survive satisfaction of all of the indebtedness of Obligor to Lender.

39.    No failure of any party to exercise any power given under this Settlement or to insist upon strict compliance with any of the terms or conditions specified in this Settlement shall constitute a waiver of such party's right to demand strict compliance with the terms of this Settlement or the Loan Documents.

40.    Nothing contained in this Settlement shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent, partners, joint venturers, or of any association whatsoever between Lender and Super Stop Parties other than the arms-length relationship of creditor and debtors.

41.    This Settlement is intended by the parties as a final expression of their agreement with respect to the subject matter hereof and as a complete and exclusive statement of the terms and conditions thereof, superseding and replacing all prior negotiations between the parties hereto, or any of them, whether written or oral. Any provision of this Settlement may be changed, waived or terminated only by written instrument signed by the party against whom the

change, waiver, or termination is sought to be enforced. Each of the parties to this Settlement acknowledges that no other party, or agent or attorney of any other party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this Settlement or any of the other documents referred to herein, and each party acknowledges that he or it has not executed this Settlement or such other documents in reliance upon any such promise, representation or warranty not contained herein. The parties to this Settlement acknowledge that all of the terms of this Settlement were negotiated at arm's length and that this Settlement and all documents executed in connection with it were prepared and executed without undue influence of any kind exerted by any party upon any other party.

42.     Any time herein the term or phrase "absent Lender's written consent" is used herein, the Super Stop Parties expressly acknowledge that that term imposes no duty or obligation whatsoever for Lender to exercise that consent, and in fact Lender may decline to exercise that consent in is sole and absolute discretion for any or no reason.

43.     This Settlement shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida, excluding the principles thereof governing conflicts of law.

44.     Except as specifically provided herein, this Settlement shall be binding upon, and shall inure to the benefit of, the respective successors and assigns of the parties, including trustees.

45.     **Time is of the essence with respect to the timing of performance of all obligations under this Settlement, and not extension may be inferred or implied. The Super Stop Parties agree that even things beyond their control, whether it be acts of God or nature, government action or inaction, or conduct of third parties shall not extend any deadline in this Settlement.**

46.     **THE PARTIES HEREBY WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY FOR ANY CLAIM, ISSUE, DISPUTE, OR MATTER RELATED TO OR ARISING OUT OF THIS SETTLEMENT.**

47.     Lender shall have the right to proceed with this Settlement without obtaining the executed signature of Denise Qureshi, and in that event, they failure to obtain her signature shall not affect the effectiveness or enforceability of this Settlement, and at the same time, she shall not benefit from any of the releases or concessions provided to any of the Guarantors in this Settlement.

**[SIGNATURES ON FOLLOWING PAGES]**

4822-9810-8436.7

WHEREFORE, the parties executed this Settlement Agreement.



**RONIT T DERY**
MY COMMISSION # EE224713
EXPIRES August 13, 2016
(407) 398-0153   FloridaNotaryService.com

**Super Stop 407, Inc.**

By: _Qujay Qurshi_

Its: _Manager_

STATE OF _Florida_

COUNTY OF _Broward_

BEFORE ME, the undersigned authority, personally appeared _____, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, as _____ of Super Stop 407, Inc., of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _8|13|16_

**RONIT T DERY**
MY COMMISSION # EE224713
EXPIRES August 13, 2016
(407) 398-0153   FloridaNotaryService.com

**Subco Beeline, Inc.**

By: _____

Its: _Presnd_

STATE OF _Florida_

COUNTY OF _Broward_

BEFORE ME, the undersigned authority, personally appeared, Mahammad Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, as _____ of Subco Beeline, Inc., of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _8|13|16_

4822-9810-8436.7



RONIT T DERY
MY COMMISSION # EE224713
EXPIRES August 13, 2016
(407) 398-0153  FloridaNotaryService.com

MAHAMMAD QURESHI

By: _____
Title:  Guarantor

STATE OF Florida

COUNTY OF Broward

    BEFORE ME, the undersigned authority, personally appeared Mahammad Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: 8|13|16

DENISE QURESHI

By: _____
Title:  Guarantor

STATE OF _____

COUNTY OF _____

    BEFORE ME, the undersigned authority, personally appeared Denise Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _____

4822-9810-8436.7

**AFRIDI INVESTMENTS, L.P.**

By: _____
Obaid Afridi
Its:  General Partner

~~STATE~~ Province OF _Alberta_
~~COUNTY~~ City OF _Grande Prairie_

    BEFORE ME, the undersigned authority, personally appeared Obaid Afridi, who is personally known to me or who has produced _Drivers Licence_ as identification, and who executed the foregoing Settlement Agreement, as General Partner of Afridi Investments, L.P. of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _non expiry_

ANDREA B. CHRENEK
Barrister and Solicitor

**Exhibit 1**

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Fifth Third Bank,

      Plaintiff,

v.                                                                      CASE NO. 10-18640

Super Stop 407, Inc. et. al.,

      Defendants.

_____/

## CONSENT TO ENTRY OF JUDGMENT AND RECEIVER ORDER

      Pursuant to that certain Settlement Agreement by and among Plaintiff on the one hand and Super Stop 407, Inc., Subco Beeline, Inc., Mahammad Qureshi, and Denise Qureshi, on the other hand (collectively, the  "Super Stop Parties"), the Super Stop Partieshereby consent to the entry of the (1) Amended Final Judgment of Foreclosure attached hereto as **Exhibit "1"** and (2) **if applicable** hereafter under the terms of the Settlement Agreement, the proposed Order Appointing Receiver attached hereto as **Exhibit "2"**, both without notice or hearing.

      Plaintiff and the Super Stop Parties further consent to the retention of jurisdiction by the above-captioned court to enforce the Settlement Agreement's terms as they pertain to any matter within the jurisdiction of this court, including entry of subsequent orders.

**RONIT T DERY**
MY COMMISSION # EE224713
EXPIRES August 13, 2016
(407) 398-0153    FloridaNotaryService.com

**Super Stop 407, Inc.**

By: _Qurgey Qureshi_

Its: _Manager_

STATE OF Florida

COUNTY OF Broward

      BEFORE ME, the undersigned authority, (personally) appeared _____, who is personally known to me or who has produced _____ as identification, and

4822-9810-8436.7

who executed the foregoing Settlement Agreement, as _____ of Super Stop 407, Inc., of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: 8|13|16

**Subco Beeline, Inc.**

By: _____

Its: _____

STATE OF Florida

COUNTY OF Broward

BEFORE ME, the undersigned authority, personally appeared, Mahammad Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, as _____ of Subco Beeline, Inc., of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: 8|13|16

RONIT T DERY
MY COMMISSION # EE224713
EXPIRES August 13, 2016
(407)398-0153    FloridaNotaryService.com

**MAHAMMAD QURESHI**

By: _____
Title: Guarantor

STATE OF Florida

COUNTY OF Broward

BEFORE ME, the undersigned authority, personally appeared Mahammad Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, of his/her own free will, and who, having been

4822-9810-8436.7

sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _8̲|̲13̲|̲1̲6̲_

**DENISE QURESHI**

By: _____
Title:  Guarantor

STATE OF _____

COUNTY OF _____

    BEFORE ME, the undersigned authority, personally appeared Denise Qureshi, who is personally known to me or who has produced _____ as identification, and who executed the foregoing Settlement Agreement, of his/her own free will, and who, having been sworn, acknowledged before me that the information contained herein is true and correct to the best of his/her knowledge.

_____
Notary Public
My Commission Expires: _____

4822-9810-8436.7

**Exhibit 2**

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Fifth Third Bank,

      Plaintiff,

v.                                  CASE NO.  10-18640

Super Stop 407, Inc. et. al.,

      Defendants.

_____/

**ORDER APPOINTING RECEIVER**

      Pursuant to Rule 1.620 of the Florida Rules of Civil Procedure and the Consent to Entry of Judgment and Receiver Order, pursuant to that certain Settlement Agreement between Plaintiff on the one hand and Super Stop 407, Inc., Subco Beeline, Inc., Mahammad Qureshi, and Denise Qureshi, on the other hand (the "Super Stop Parties"), the Court orders the appointment of a receiver on the terms and conditions set out below.

1.      Plaintiff owns and holds promissory notes, a mortgage, assignment of rents, and other loan documents, as well as foreclosure judgment, all of which constitutes a first lien on that certain property located in Orange County, Florida and described in **Exhibit 1** attached hereto, and the improvements located thereon as well as the leases and rents generated therefrom and gas station equipment machines, coolers, freezers, rack and the like thereon (the "Property")

2.      Super Stop 407, Inc. ("Borrower") owns the Property.  Subco Beeline, Inc. is in possession of the Property under a verbal month-to-month lease and operating agreement arrangement, which is subordinate and inferior to the lien of Plaintiff therein.

3.      The Super Stop Parties have agreed to entry of this Order Appointing Receiver, but only under the terms of the Settlement Agreement.

**IT IS ORDERED AND ADJUDGED:**

1.    **Appointment of Receiver.** _____ (Any person selected by Plaintiff in its sole discretion under the Settlement Agreement, who is acceptable to

1

4822-9810-8436.7

the court) (the "Receiver"), is appointed as Receiver of Borrower and all of the Property (the "Property"), including but not limited to: the Property, any keys to any of the Property, all books and records identified in paragraph 3 below, and all other personal property, tangible or intangible, that is used or usable or related to operations of the Property.

2. **Possession and Control of Property.** The Receiver is authorized immediately to take possession and control of the Property, and manage, operate and protect the Property, and to exercise the powers and duties set forth in this order, including, but not limited to, after consultation with Plaintiff, the authority to operate, sell or lease all or any portion of the Property, to hire and fire personnel, enter into agreements for goods or services, execute documents relating to sales and leases. The Receiver also shall have all of the powers and duties that receivers customarily exercise for income producing real property with business operating thereon.

Upon the court's pronouncement that the relief summarized in this order is granted, the Super Stop Parties, and all of their employees and agents, are directed to refrain from exercising control or possession in any manner over any of the Property except as the Receiver may specifically direct in writing.

3. **Turnover of Property.** Borrower and Beeline and all of their employees and agents, are directed to turn over all of the following relating to the Property to Receiver, to the extent that they are in their possession, custody and control:

a. All keys and access codes necessary for the Receiver to obtain possession and manage the Property as provided in this order.

b. All documents and records useful in the construction of any improvement on the Property, including but not limited to building permits, plumbing and HVAC drawings, environmental reports, construction or materials contracts, warranties, architectural or design diagrams, and building specifications.

c. All work in process, materials, supplies, "punch lists" and pending work orders with respect to construction at the Property.

d. All construction contracts and subcontracts for construction to the Property.

e. All agreements with brokers or other commission agreements pertaining to sales or leases of any portion or all of the Property.

f. All documents, books, records, computer files and records concerning the finances, operation and management of the Property.

g. A list of all payables and receivables, and all details regarding same (although Receiver is not obligated to pay any accounts payable incurred by his appointment).

h. All documents identifying pending litigation, threatened litigation, or governmental notices.

i. All utility and service agreements.

j. Such other records pertaining to the operation, construction and sale of the Property as may be reasonably requested by the Receiver, including, but not limited to, management and services contracts.

4822-9810-8436.7

k.    All executory contracts, including, but not limited to, purchase agreements, leases, consignment agreements, service contracts, listing agreements and management contracts.

l.    Insurance policies on the Property.

m.    Records for all accounts where funds relating to the Property are held in escrow, and accountings for all such funds that have been received relating to the Property.

n.    Copies of all operating licenses and permits.

o.    Copies of all reports, tax and otherwise, filed with the State of Florida or United States.

p.    Copies of all pending pleadings and papers filed in any litigation relating to the Property, and of documents related to any threatened litigation, whether offensive or defensive, including, but not limited to, lien foreclosures and evictions.

q.    Copies of any notices of violation relating to the Property.

r.    All surveys, construction plans, sales literature, condominium documents, floor plans, open permits, engineering reports and architectural reports.

s.    Documentation relating to any work performed relating to the Property for which services remain unpaid or that gave rise to asserted liens.

t.    Building and structural inspection reports.

u.    Offers to purchase all or any portion of the Property that have not resulted in a closing.

v.    All documents relating to Beeline's operation of a gas station or convenience store on the Property.

4.    **Surety Bond.** The Receiver is directed to obtain a surety bond in the amount of $25,000.00 to be provided by a surety authorized to do business in the State of Florida securing performance by the Receiver of the duties and obligations of his office of Receivership. The bond shall provide coverage to plaintiff, defendant and the Receivership estate for loss due to acts of all agents, servants, and employees of the Receiver. The bond shall be submitted for approval within 20 days of the date of this Order. The cost of the bond shall be an expense of the receivership, for which the Receiver shall be reimbursed in accordance with the terms of this order. If there are insufficient funds of the Property, Plaintiff may advance the same under as a protective advance or through receiver certificates, which amounts shall bear interest at the rate of 4.75%, shall be a lien on the Property with the same priority as the mortgage, shall be due no later than the date of the foreclosure sale, and said advances shall be added to the amounts due under the an amended final judgment entered pursuant to this Settlement. No receivership bond shall be required.

5.    **Collection of Income.** The Receiver is authorized to collect and take possession and control of all rents, income and profits from the Property. Borrower and Beeline are directed to refrain from exercising any control over any such rents, income and profits, including, but not limited to, any operating or escrow accounts related to the Property, and turn over to the Receiver any and all such rents, income and profits that Borrower or Beeline may receive or may have received, whether past, present or future.

6.    **Checks.** The Receiver is authorized to endorse any and all checks that he may receive payable to defendants and deposit same into accounts under the Receiver's control.

3

4822-9810-8436.7

7.     **Use of Funds.**  The Receiver is authorized to utilize the collected funds to fulfill any of his obligations under this Order, including paying any excess income to partially reduce the sums due Plaintiff.

8.     **Condition of Property.**  The Receiver is authorized to investigate the condition of the property, the tax status, and the status of insurance

9.     **Actions in Furtherance of Possession and Control.**  The Receiver is authorized to take any reasonable actions that he deems necessary or appropriate to take possession of, exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Property.  The Receiver may also retain the services of parties or professionals as may become necessary to effectuate his duties; provided, Receiver shall only engage and pay counsel or accounts upon consent of Plaintiff or order of the Court.

10.     **Inventory.**  The Receiver shall prepare and file with the court, pursuant to Rule 1.620 of the Florida Rules of Civil Procedure, a complete inventory, under oath, of all of the assets of which he takes custody and control under this order.

11.     **Reporting.**  The Receiver is directed to prepare and file within 45 days of the date of this order and on the 20th day of each month thereafter so long as the receivership is in force, a report as required by Rule 1.620 of the Florida Rules of Civil Procedure, under oath, setting forth and reporting all changes in assets in his charge or claims against the assets that have occurred during the period covered by the report.  The Receiver shall file such reports with the Clerk of the Court and shall serve a copy of each report upon counsel for plaintiff and upon defendants or their attorneys of record.

12.     **Interference with Receiver.**  The Super Stop Parties, along with their respective officers, agents, servants, employees, representatives, attorneys and all those in active consort or participation with any of them are prohibited from interfering in any way with the duties and activities of the Receiver under this Order.

13.     **Cooperation with Receiver.**  The Super Stop Parties are directed to reasonably honor the requests of the Receiver in the discharge of his duties.

14.     **Compensation of Receiver and Agents.**  The Receiver and all persons whose services are utilized by the Receiver shall be compensated, subject to the approval of the court, at their normal hourly rates, with invoices to be issued on a monthly basis.  The Receiver shall be reimbursed for any reasonable out of pocket expenses incurred during the period of the Receivership concerning the obligations and duties set forth in this order.  Plaintiff shall be responsible for the reasonable fees and expenses of the Receiver to the extent the revenues of the Property are not sufficient, but may fund the same through receiver's certificates as described above.

15.     **Access to Books and Records.**  Upon reasonable notice, the Receiver shall permit Plaintiff and the Super Stop Parties and their agents and counsel access to the Property at all reasonable times, to inspect the Property.

16.     **Exercise of Powers Available Under Applicable Law.**  Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available under the laws of the State of Florida, which may be incidental to the powers described in this order, and to act on behalf of and in the name of Borrower, as applicable, as the Receiver shall deem appropriate.

4822-9810-8436.7

17.    **Further Instruction.**  The Receiver shall have the right to apply to the court for further instructions and authorization during the pendency of this action.

18.    **Protective Advances/Receiver's Certificates.**    Plaintiff may fund shortfalls necessary to maintain and protect the Property or to otherwise permit the Receiver to carry out his/her obligations hereunder (a) as advances to the Receiver made by Plaintiff for the benefit of the Property, pursuant to the protective advances provisions of the Loan Documents, which applicable, shall be secured by lien, and shall have priority over all claims and liens of all others claiming an interest in the Property, except they shall be *pari passu* with Plaintiff's lien under the mortgage and other Loan Documents, and/or (b) as advances through Receiver Certificates as described above.

19.    **No Transfer of Title.**  Nothing contained in this order shall be construed to transfer title to the Property or Property to the Receiver; however, pursuant to the Consent, the Super Stop Parties expressly authorize the Receiver to sell all or a portion of the Property, subject to the written approval of Plaintiff.

20.    **Lien Priorities.**    The rights and priorities of plaintiff, other mortgage lien claimants, any construction lien claimants, and any other parties with respect to the Property shall be determined in accordance with Florida law, without regard to the provisions of this order.

21.    **Confidentiality.**  The parties to this action, their counsel, any experts retained by the parties, and all those in active concert or participation with them who receive actual notice of this order, or otherwise, shall keep all non-public information relating to the Property confidential, and all such persons are prohibited from disclosing any such information to anyone other than the parties to this action and their counsel without the specific order of the court. Notwithstanding the foregoing, the Receiver, plaintiff and their attorneys and agents may provide potential purchasers, consultants, or any other appropriate persons with information useful for the marketing, sale or management of the Property.

22.    **Receiver Duties.**  The Receiver shall faithfully discharge all of the duties outlined in this order, and shall obey all other orders of the court.

23.    **Acceptance of Appointment as Receiver.**  The Receiver's duty to act in that capacity is subject to the written acceptance and approval of the terms of this order.  Upon acceptance, the Receiver shall be bound by the terms of this order, and all obligations imposed under it.

24.    **Duration of Receivership.**  This Receivership shall continue until the earlier of: (i) the issuance of a certificate of title following a foreclosure sale or the execution of a deed through a private sale by the Receiver, as permitted herein; or (ii) the further order of the court.

26.    **Final Accounting.**    Within thirty (30) days after the termination of the Receivership for any reason, the Receiver shall submit a final accounting for approval by the court, with copies to be furnished to the parties to this action.

27.    **Court Approval of Final Accounting.**  Ten (10) days after service of the Receiver's final accounting, absent the timely filing of an objection from any party, the Receiver shall be discharged, and his bond canceled, without further order of the court.

4822-9810-8436.7

ORDERED in chambers at Orange County, Florida on _____, 2013.


_____
Circuit Judge


Copies furnished to:

Mark J. Wolfson, Esq.
FOLEY & LARDNER, LLP
Co-counsel for plaintiff
100 North Tampa Street
Suite 2700
Tampa, Florida 33602

6

4822-9810-8436.7